IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2016

## ANTHONY DEWAYNE BLAYLOCK v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-15-170      Roy B. Morgan, Jr., Judge**

_____

**No. W2015-01560-CCA-R3-PC – Filed August 4, 2016**

_____

The petitioner, Anthony Dewayne Blaylock, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel. Following our review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Lee R. Sparks, Jackson, Tennessee, for the appellant, Anthony Dewayne Blaylock.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In May 2014, the petitioner was convicted by a Madison County Circuit Court jury of two counts of aggravated assault, attempted aggravated assault, and criminal trespass and was sentenced by the trial court to an effective sentence of eight years in the Department of Correction. His convictions were affirmed by this court on direct appeal, and he did not file for application for permission to appeal to the supreme court. State v. Anthony Dewayne Blaylock, No. W2014-01578-CCA-R3-CD, 2015 WL 1851679, at *1 (Tenn. Crim. App. Apr. 22, 2015).

The petitioner's convictions stemmed from his uninvited entry into the home of his estranged wife, Sharon Polk, and his assault of Ms. Polk and their fourteen-year-old son, A.B.,[1] which occurred at a time when Ms. Polk had a "contact order of protection" against the petitioner. Id. at *1. The State presented the following evidence with respect to the petitioner's aggravated assault and attempted aggravated assault convictions, which were based on his attack of his son:

> Mrs. Polk testified that A.B. stood up from the couch and approached the [petitioner]. The [petitioner] grabbed A.B.'s neck and encircled it with his hands. Ms. Polk got away and called the police, and the [petitioner] and A.B. went outside. Ms. Polk said that, as she called the police, the [petitioner] left. A.B. came back into the living room from outside, and he was "crying and screaming" and holding his back. A.B. was "gasping for his breath and . . . throwing up blood." A.B. told her that the [petitioner] had hit him with a "weight." The police arrived and called an ambulance. Ms. Polk described the weight the [petitioner] used to hit A.B. as a round weight with a "little hole in it." The weight was outside her home being used to keep the basketball goal in place.
>
> . . . .
>
> A.B. testified that he was fourteen at the time of trial, and he identified the [petitioner] as his father. A.B. testified about that evening, saying that all he recalled was his father entering the residence and arguing. He said he also remembered going outside and "getting hit with the weight" by the [petitioner]. He said he did not recall his father grabbing him around the neck. At this point, the State refreshed A.B.'s memory with a statement he made to police in this case. Thereafter, he agreed that his father pushed him toward a wall by placing his hand around his neck. A.B. said that he went outside, where his father hit him with a weight. He said he was "coughing and stuff," so he went back inside and sat on the floor. A.B. said that it was "burning real bad" when he was coughing and that he could not stop coughing. He agreed he started spitting out blood and that he then threw up. A.B. said that, at the hospital, doctors told him that he would be fine and might have some bruising.

Id. at *1-2.

On May 26, 2015, the petitioner filed a *pro se* petition for post-conviction relief in which he raised issues of ineffective assistance of counsel and prosecutorial misconduct.

---

[1] We refer to the minor victim by his initials in order to protect his privacy.

On July 20, 2015, following the appointment of post-conviction counsel, the petitioner filed an amended petition in which he alleged that trial counsel was ineffective for failing to fully investigate the facts of the case. Specifically, the petitioner alleged that counsel should have sought the medical report and any photographs taken of A.B.'s injuries, which "could have served to prove a lack of any bodily injury to the alleged victim." On July 30, 2015, despite being represented by counsel, the petitioner filed a *pro se* motion to add the additional claim that counsel was deficient for not investigating or researching the variance between the date of the offenses in the indictment and the proof at trial. The petitioner alleged that he was prejudiced by counsel's failure to determine and/or research the actual date of the offenses, in that he was not afforded the opportunity to provide a notice of alibi to the State.

At the evidentiary hearing, post-conviction counsel informed the court that he had discussed with the petitioner the variance issue raised in the petitioner's *pro se* filing and that that issue would "be the primary thrust of our arguments today." He went on to argue that the petitioner's convictions should be set aside because both the indictment and the judgment forms listed an offense date of November 30, 2013, while the testimony at trial was that the events transpired on November 29, 2013.

Trial counsel, called as a witness by the State, testified that he was employed with the 26th Judicial District Public Defender's Office, had practiced law in the district for eleven years, and had been appointed to represent the petitioner. He said he talked to the petitioner several times about the facts of the case, including after he reviewed discovery from the State, which had an open file policy. He identified the affidavit of complaint, which reflected offense dates of November 28, 2013, and November 30, 2013, and agreed that "the events that . . . went to trial occurred over a series of dates," culminating with the petitioner's arrest on November 30, 2013. As he recalled, the petitioner had a total of four cases, which were "all close proximity to one another as far as the dates [went]."

Trial counsel testified that he and the petitioner did not specifically discuss dates but instead discussed the allegations and the events that had occurred. He said the petitioner's only defense was that the allegations were false; the petitioner at no time mentioned an alibi defense, either in conversations with counsel or in the numerous *pro se* motions that he filed. Trial counsel agreed that the indictment listed the offenses as having occurred "on or about November 30, 2013," and affirmed that he was not taken by surprise by anything that occurred at trial, including the testimony of the witnesses that the incident occurred on November 29 rather than November 30. On cross-examination, he agreed that the judgments reflected an offense date of November 30, 2013, and testified that he did not remember any testimony at trial of the offenses having occurred on that date. He recalled that some of the testimony at trial indicated that the offenses

had occurred on November 29, while at another point, "there may have been some discussion about November 28th."

At the conclusion of the hearing, the post-conviction court found that the petitioner had not met his burden of proving his allegations of defective performance of counsel by clear and convincing evidence and dismissed the petition. On August 13, 2015, the post-conviction court entered a written order of dismissal in which the court noted that the indictment contained only an approximate date for the offenses, the petitioner failed to present any evidence of an alibi, and trial counsel testified that he was not surprised by any evidence at trial, including the date of the offenses.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, our review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

4

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner argues that counsel was deficient in his performance, thereby prejudicing the outcome of his case, by not investigating the minor victim's medical report or pointing out the variance between the dates of the offenses in the indictment and the testimony at trial. The record, however, fully supports the findings and conclusions of the post-conviction court that the petitioner failed to meet his burden of demonstrating ineffective assistance of counsel. As the post-conviction court noted in its written order, the only evidence presented at the evidentiary hearing was the testimony of trial counsel, who explained that the petitioner never mentioned an alibi defense and that he was not surprised by any testimony at trial, including the date of the offenses. Moreover, the indictment was not specific as to date, and "[a] variance between an indictment and the proof in a criminal case is not material where the allegations and the proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984).

With respect to counsel's alleged deficiency for failing to investigate the medical report, we note, first, that the petitioner submitted no medical report of the minor victim at the evidentiary hearing. We further note that, according to this court's direct appeal opinion, the petitioner's convictions for aggravated assault and attempted aggravated assault against the minor victim did not depend upon the victim's injuries, but instead were based on the victim's reasonable fear of imminent bodily injury caused by the

5

petitioner's strangulation of the victim's neck and the petitioner's use of the weight as a deadly weapon against the victim. See Anthony Dewayne Blaylock, 2015 WL 1851679, at *4-5; see also Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii)(iv). In sum, we conclude that the record supports the post-conviction court's findings and conclusions that the petitioner failed to meet his burden of showing that he was denied the effective assistance of counsel.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court dismissing the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

6